IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 13-00653 (06) SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT |
| | ) | JACOB FAAGAI-DEL MUNDO'S |
| vs. | ) | MOTION TO SUPPRESS |
| | ) | |
| JACOB FAAGAI-DEL MUNDO (06), | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT JACOB FAAGAI-DEL MUNDO'S
MOTION TO SUPPRESS**

## I.      INTRODUCTION.

Defendant Jacob Faagai-Del Mundo moves to suppress contraband seized when his vehicle was searched on November 5, 2012, as well as statements he made on November 8, 2012, and June 25, 2013.  Because there was probable cause for law enforcement agents to believe that there was contraband in Faagai-Del Mundo's vehicle, his motion to suppress is denied.

## II.     FINDINGS OF FACT.

This court sets forth its factual findings based on the evidence presented.  Whenever the court includes in its factual findings a matter that should properly be included in the court's conclusions of law, or vice versa, the matter should be recharacterized so that it falls within the proper category.

1.  This court held a hearing on Faagai-Del Mundo's motion to suppress on November 21, 2014, at which Drug Enforcement Administration ("DEA") Special Agents Clement Sze and

Lauren Carney testified. The court found both witnesses credible. The parties stipulated to the admission of Government Exhibits 1 to 14 for purposes of the hearing, and also agreed that, had he testified live, Sergeant Leslie Morris of the Honolulu Police Department would have testified as summarized at ECF No. 155 at PageID # 454.

2. Beginning in the summer of 2012, the DEA conducted an investigation involving Co-Defendant John Penitani that included court-authorized wiretaps. See ECF No. 270-1, PageID # 443. The wiretaps were operational from August 24, 2012, through November 14, 2012, and were aimed at identifying members of Penitani's suspected drug trafficking network. See id.; ECF No. 270-1, PageID # 875. After seizing fourteen ounces of methamphetamine that they attributed to Penitani as the source, see Testimony of Special Agent Clement Sze,[1] law enforcement agents monitoring Penitani's actions learned that Co-Defendant Julius Mitchell had given Penitani contact information for Faagai-Del Mundo. See ECF No. 155, PageID # 444.

3. On October 29, 2012, agents intercepted calls and text messages between Penitani and Faagai-Del Mundo. See ECF No. 270-1, PageID # 875. Through these intercepted phone calls and

---

[1] Although the court has had access to the court reporter's rough transcript, no certified transcript has been filed. Accordingly, the court cannot provide transcript citations for references to testimony provided at the hearing held on November 21, 2014.

messages, agents learned that Penitani and Faagai-Del Mundo
planned to meet, apparently for the first time, at the Genki
Sushi restaurant in the Kapolei area in West Oahu.  Special Agent
Sze testified that he thought the planned meeting probably
involved drugs because Penitani seemed concerned about whether
Faagai-Del Mundo was or would come alone.  <u>See</u> Testimony of
Special Agent Clement Sze.  Specifically, Penitani asked in an
intercepted phone conversation, "You by yourself eh?"  <u>See</u>
Exhibit 12.  This court finds it particularly noteworthy that
Faagai-Del Mundo responded, "Yeah, yeah automatic."  <u>Id.</u>

     4.  Agents saw Penitani and Faagai-Del Mundo at Genki
Sushi on October 29, 2012, at approximately 4:00 p.m., but could
not hear what was said.  <u>See</u> Testimony of Special Agent Clement
Sze.  Soon after the meeting, Penitani and Mitchell had an
intercepted telephone call in which Penitani appeared interested
in ensuring that Faagai-Del Mundo could be relied upon to support
Penitani. Thus, Penitani asked Mitchell whether Faagai-Del Mundo
was "trustworthy" and told Mitchell, "I said I just hope he don't
try to do me wrong."  <u>See</u> Exhibit 1.

     5.  At approximately 8:00 p.m. the same day, agents
intercepted another call between Penitani and Faagai-Del Mundo in
which Faagai-Del Mundo was trying to locate Penitani at the
Pearlridge Shopping Center for what seemed to have been a pre-
planned meeting.  <u>See</u> ECF No. 155-3, PageID # 476; Exhibit 2.

Agents were not able to conduct surveillance of this meeting, but believed, given the preceding information they had, that Penitani and Mitchell were meeting Faagai-Del Mundo to supply him with methamphetamine. See Testimony of Special Agent Clement Sze.

6. At approximately 1:12 p.m. on November 5, 2012, agents intercepted a text message from Faagai-Del Mundo to Penitani in which Faagai-Del Mundo said that he was going to Costco in Kapolei "to buy food for [his] house" and that if Penitani "gotta buy food for [Penitani's] house," they would meet at Costco. See Exhibit 4. Special Agent Sze testified that he believed that what Faagai-Del Mundo was really talking about was meeting with Penitani to give Penitani the money for drugs previously fronted to Faagai-Del Mundo. See Testimony of Special Agent Clement Sze. It does appear to the court unusual that two people who met for the first time about a week earlier and who are clearly not romantically involved with each other would be on such intimate terms that they would be meeting to do grocery shopping together.

7. Agents went to Costco in Kapolei, where they saw Penitani and his then-girlfriend, Keschan Taylor, in the parking lot. See id. Special Agent Sze testified that, while agents did not see Faagai-Del Mundo at Costco, Sze thought Faagai-Del Mundo had been there but had left by the time agents arrived. See id.

8. At approximately 6:06 p.m. the same day, agents

intercepted a text message from Penitani to Faagai-Del Mundo in which Penitani stated, "Man thanks to this broad I lost ten large.  Man sorry taking long with da tools bro."  <u>See</u> Exhibit 5. Faagai-Del Mundo responded at approximately 6:36 p.m., stating, "I really need my tools so I can get back to work bro wat time we looking at."  <u>See</u> Exhibit 6.  Special Agent Sze testified that he believed Penitani was indicating to Faagai-Del Mundo that Penitani had lost $10,000, and that use of the word "tools" was a reference to methamphetamine.  <u>See</u> Testimony of Special Agent Clement Sze.

9.  At approximately 6:38 p.m. the same day, agents intercepted a text message from Faagai-Del Mundo to Penitani in which Faagai-Del Mundo stated, "Thanks brradah dont wanna lose my job."  <u>See</u> Exhibit 7.

10.  At approximately 7:46 p.m. the same day, agents intercepted a phone call between Penitani and Faagai-Del Mundo. <u>See</u> Exhibit 10.  Penitani and Faagai-Del Mundo discussed where they should meet later that night.  <u>Id.</u>  Penitani suggested McDonald's in Waianae, but seemed concerned with "plenty people" being there.  <u>Id.</u>  Faagai-Del Mundo suggested Jack In The Box and said that "hardly any people" go there.  <u>Id.</u>  Penitani and Faagai-Del Mundo agreed to meet at the Waianae Jack In The Box. <u>Id.</u>

11.  Agents went to the Jack In A Box in Waianae in

anticipation of the meeting between Penitani and Faagai-Del Mundo. See Testimony of Special Agent Clement Sze. However, at approximately 8:14 p.m., agents intercepted a text message from Penitani to Faagai-Del Mundo changing the location of the meeting. See Exhibit 11. Penitani told Faagai-Del Mundo, "I stay 711." Id. Realizing that there were two 7-Eleven stores in Waianae and uncertain which was the new location, the agents split up, with some driving to each store. See Testimony of Special Agent Clement Sze.

12. The agents who drove to the 7-Eleven store near Waianae High School saw Faagai-Del Mundo standing in the parking lot, leaning into the passenger side window of Penitani's car. See id. Penitani and Faagai-Del Mundo talked for about thirty minutes, but agents did not see them exchange anything in that time period. See id.

13. At approximately 9:00 p.m., Faagai-Del Mundo left the 7-Eleven parking lot and drove west on Farrington Highway. See id. Special Agent Sze had arranged for HPD Sergeant Leslie Morris to make a purported traffic stop. At about 9:05 p.m., Sergeant Morris pulled Faagai-Del Mundo over and told him that his vehicle had been identified as having been involved in a robbery. Sergeant Morris asked to be allowed to search the vehicle. See id.; ECF No. 155, PageID # 454. Faagai-Del Mundo refused to consent and became belligerent. See ECF No. 155,

PageID # 454. Sergeant Morris then directed Faagai-Del Mundo to get out of his vehicle. _See_ _id._ Faagai-Del Mundo complied, sat on the curb of the road, and used his cell phone to tell others that he had been stopped by the police. _See_ _id._ Soon afterwards some of his friends arrived. _See_ _id._ Those individuals were belligerent and verbally combative towards Sergeant Morris. _See_ _id._

14. Observing what was occurring from a short distance away, Special Agent Sze decided to intervene. He went up to where Faagai-Del Mundo was waiting on the sidewalk and told him that his vehicle was suspected of having been involved in a robbery. _See_ Testimony of Special Agent Clement Sze. Special Agent Sze asked Faagai-Del Mundo for consent to search his vehicle, but Faagai-Del Mundo again refused. _See_ _id._

15. Special Agent Sze then asked Faagai-Del Mundo where he had come from. Faagai-Del Mundo responded that he had just come from Jack In The Box, where he said he had purchased food for his family. _See_ _id._ Special Agent Sze asked Faagai-Del Mundo more than once whether he had actually come from somewhere else, and Faagai-Del Mundo repeatedly said that he had just come from Jack In The Box. _See_ _id._

16. Marked police cars then pulled up, and Faagai-Del Mundo was detained on the sidewalk near his vehicle. _See_ _id._

17. At that point, Special Agent Sze began searching

Faagai-Del Mundo's vehicle.  See id.  Faagai-Del Mundo said that

a backpack on the front passenger seat of the vehicle was not his

and instead belonged to his uncle.  See id.  Special Agent Sze

found drug paraphernalia in the backpack, and approximately half

a pound of methamphetamine in the back pocket of the front

passenger seat of the vehicle.  See id.

     18.  Faagai-Del Mundo was arrested and taken by HPD

officers for processing.  See id.  Faagai-Del Mundo was later

released pending investigation.  See id.

     19.  On November 7, 2012, Faagai-Del Mundo called

Special Agent Sze and said that he wanted to come in to talk.

See id.  During the interview, Faagai-Del Mundo made

incriminating statements.

     20.  Faagai-Del Mundo was re-arrested on June 25, 2013.

See ECF No. 270-1, PageID #s 877-78.  Faagai-Del Mundo made

additional incriminating statements following this second arrest.

See id.

     21.  Faagai-Del Mundo now moves to suppress the

evidence obtained from the search of his vehicle on November 5,

2012, and the statements he made during questioning on November

8, 2012, and June 25, 2013.  See ECF No. 270, PageID # 872.

**III.**      **CONCLUSIONS OF LAW.**

     Faagai-Del Mundo argues that the warrantless search of

his vehicle violated his Fourth Amendment rights because agents

lacked probable cause to believe that the vehicle contained contraband or evidence of a crime.  Id.; ECF No. 270-1, PageID # 881.  Faagai-Del Mundo contends that the only pertinent facts known to agents before the search were that Faagai-Del Mundo had "talked story" with Penitani in a parking lot for half an hour, that Faagai-Del Mundo was leaning into Penitani's vehicle during their conversation, and that law enforcement agents had not seen anything exchanged.  ECF No. 270-1, PageID #s 881-82.  Faagai-Del Mundo argues that these facts do not suggest that his vehicle contained any evidence of criminal activity, and that mere association with a suspected criminal does not provide probable cause to search.  Id., PageID # 882.

1.  Searches conducted without a warrant "are per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967).  The burden is on the Government to prove "that a warrantless search or seizure falls within an exception to the warrant requirement." United States v. Scott, 705 F.3d 410, 416 (9th Cir. 2012).

2.  Under the automobile exception, warrantless searches and seizures of automobiles are permitted provided that probable cause exists.  See United States v. Ibarra, 345 F.3d 711, 715 (9th Cir. 2003) ("Officers may search an automobile so long as they have probable cause.  No warrant is necessary

because of the so-called 'automobile exception' to the Fourth Amendment's warrant requirement.").

3. Probable cause exists when, considering the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

4. Contrary to Faagai-Del Mundo's assertions, agents had probable cause to search his vehicle.

5. First, Faagai-Del Mundo was associating with Penitani, an individual under investigation as a drug distributor who was considered the source of recently seized methamphetamine. Although Faagai-Del Mundo's association with Penitani does not on its own provide probable cause, it is an element that contributes to the totality of the circumstances that add up to probable cause.

6. Second, agents knew from their wiretap investigation that Penitani had been introduced to Faagai-Del Mundo by Julius Mitchell, a suspected drug trafficking associate of Penitani's. This at least suggested to agents that Faagai-Del Mundo was being contacted to participate in Penitani's drug operation.

7. Third, Penitani asked Faagai-Del Mundo in an intercepted phone conversation on October 29, 2012, whether he was or would come to their meeting alone, and Faagai-Del Mundo

responded, "Yeah, yeah automatic."  See Exhibit 12.  Penitani's
concern about whether others were around and Faagai-Del Mundo's
response that it was "automatic" that he was alone signaled that
clandestine activity was occurring, which was especially notable
considering that Penitani and Faagai-Del Mundo had apparently
never met before that day.

8.   Fourth, when Penitani and Mitchell spoke on the
phone soon after Penitani and Faagai-Del Mundo met for the first
time, Penitani asked Mitchell if Faagai-Del Mundo was
"trustworthy" and expressed his hope that Faagai-Del Mundo would
not do him wrong.   See Exhibit 1.  This further suggested that
Faagai-Del Mundo was involved in illicit activity.

9.   Fifth, Penitani and Faagai-Del Mundo appeared to
speak in code.  In intercepted text messages, Penitani apologized
to Faagai-Del Mundo for "taking long with da tools" and Faagai-
Del Mundo stated that he needed his "tools" so he could "get back
to work."  See Exhibit 5; Exhibit 6.  Faagai-Del Mundo further
stated that he did not want to "lose [his] job."  See Exhibit 7.
The use of terms such as "tools" does not mesh with anything else
in the record about Penitani.  There is no indication that law
enforcement agents had information at the time tying Penitani to
construction work, mechanical work, or other manual labor.  The
messages regarding Faagai-Del Mundo's "work" and "job" indicated
that Penitani and Faagai-Del Mundo were involved in some sort of

11

income-related activity.

10.   Sixth, Faagai-Del Mundo became belligerent upon being told by Sergeant Morris that his vehicle was believed to have been involved in a robbery.  Of course, this was a ruse,[2] and Faagai-Del Mundo had reason to know that his vehicle had not been involved in any robbery.  Curiosity, confusion, bewilderment, irritation, and even anger would all have been understandable, but anger rising to the level of belligerence in a relatively short time is notable.  Again, this reaction does not on its own constitute probable cause, but it adds to the totality of the circumstances.

11.   Seventh, during the course of Faagai-Del Mundo's conversation with Special Agent Sze on November 5, 2012, Faagai-Del Mundo lied about where he had been.  He told Special Agent Sze that he had just come from Jack In The Box, where he said he had purchased food for his family.  Agents knew that Faagai-Del Mundo had instead come from meeting with Penitani at the 7-Eleven parking lot.  Faagai-Del Mundo's lie suggested that he did not

---

[2]  Although there are limitations on how law enforcement may use ruses to conduct searches, the mere act of using a ruse does not violate the Fourth Amendment.  See United States v. Garcia, 997 F.2d 1273, 1280 (9th Cir. 1993); see also Brown v. Brierley, 438 F.2d 954, 958 (3d Cir. 1971) ("If the police must announce their investigatory intentions even when acting openly in their official capacities, it might well follow that the police also must explain their purposes to criminal suspects when carrying out undercover investigations in which it is necessary that the police camouflage their identity.").

want agents to know where he had really been, even though nothing about a 7-Eleven parking lot is, without more, inherently suspicious. Even if they had not had probable cause before this point, agents certainly had enough information to establish probable cause upon hearing this repeated lie, which indicated that Faagai-Del Mundo did not want agents to know where he had actually been. Given the totality of the circumstances, there was a fair probability that contraband or evidence of a crime would be found in Faagai-Del Mundo's vehicle. See Gates, 462 U.S. at 238.

12. In his motion, Faagai-Del Mundo also states that "the prolonged, presearch detention here, even if it was justified by reasonable suspicion of criminal activity, was too long to be reasonable under the Fourth Amendment." ECF No. 270-1, PageID # 879. Faagai-Del Mundo contends that he was detained from 9:00 p.m. until the search of his vehicle was concluded sometime between 9:30 and 10:00 p.m. Id. However, Faagai-Del Mundo subsequently states that this issue "ultimately does not matter" because "the agents did not have probable cause." Id., PageID #s 879-80.

13. Given the comparative lack of analysis supporting Faagai-Del Mundo's argument regarding the length of his detention and the absence of argument on this issue at the hearing on this motion, it is unclear to the court whether Faagai-Del Mundo is

truly objecting to the length of his presearch detention.  Even
assuming Faagai-Del Mundo is making such an objection, the
argument fails.

14.  Faagai-Del Mundo's detention was not so lengthy as
to violate the Fourth Amendment.  It appears Faagai-Del Mundo was
pulled over sometime between 9:00 and 9:05 p.m., and Special
Agent Sze began speaking with Faagai-Del Mundo approximately ten
to fifteen minutes later.  During Special Agent Sze's
conversation with Faagai-Del Mundo, Faagai-Del Mundo lied about
his whereabouts.  At the very latest, agents had probable cause
to search Faagai-Del Mundo's vehicle at that point.  The record
before this court indicates that the period of Faagai-Del Mundo's
detention prior to the search was likely about fifteen to twenty
minutes, and there is no evidence suggesting that the detention
was longer than necessary or somehow divorced from agents'
reasonable suspicion.  See Florida v. Royer, 460 U.S. 491, 500
(1983); Gallegos v. City of Los Angeles, 308 F.3d 987, 992 (9th
Cir. 2002).  This conclusion is bolstered by evidence in the
record indicating that Faagai-Del Mundo and his friends were
belligerent and uncooperative at the scene, which meant that the
event could not proceed as quickly as it otherwise could have.

15.  Because the court has determined that no Fourth
Amendment violation occurred, Faagai-Del Mundo's statements do
not fall under the "fruit of the poisonous tree" doctrine and are

not suppressed.  See <u>United States v. Redlightning</u>, 624 F.3d 1090, 1102 (9th Cir. 2010) (holding that the fruit of the poisonous tree doctrine applies when evidence is obtained "subsequent to a violation of the Fourth Amendment").

**IV.      CONCLUSION.**

Faagai-Del Mundo's motion to suppress is denied.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 23, 2014.



<u>/s/ Susan Oki Mollway </u>
Susan Oki Mollway
Chief United States District Judge


<u>United States of America v. Jacob Faagai-Del Mundo (06)</u>, Crim. No. 13-00653 (06) SOM; ORDER DENYING DEFENDANT JACOB FAAGAI-DEL MUNDO'S MOTION TO SUPPRESS

15